UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EMERGENCY SERVICES BILLING CORPORATION, | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 1:11-cv-0492-RLY-TAB |
| VITRAN EXPRESS, INC. and MIKE BROWN, | ) ) ) | |
| Defendants. | ) | |

**ENTRY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Emergency Services Billing Corporation ("ESBC"), moves for summary judgment against the defendants, Vitran Express, Inc. ("Vitran Express") and Mike Brown ("Brown") (collectively "Defendants"), seeking costs and attorney's fees associated with cleaning up a hazardous waste spill under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq*. For the reasons set forth below, ESBC's Motion is **DENIED**.

I.   **Factual Background**

On July 30, 2008, Brown was operating a tractor-trailer, owned by Vitran, to deliver a load of textbooks to Delta High School. (Declaration of Tim Baty ¶ 6). While the tractor-trailer was on school property, someone noticed that it was leaking a potentially hazardous substance and called 911. (*Id*.). Brown confirmed through his

1

paperwork that the substance was UN 1903 Guide 153. (*Id.* ¶¶ 9, 11). The Emergency Response Guidebook ("Guidebook") identifies UN 1903 as a "toxic" substance and warns, among other things, to stay upwind of leaks, and that contact with water presents explosion hazards. (*Id.* ¶ 11). The Guidebook states that leaks of this substance should be isolated in all directions for at least one hundred fifty (150) feet. (*Id.*).

The Hamilton Township Volunteer Fire Department ("Hamilton Township") was dispatched to the scene, led by Chief Tim Baty ("Chief Baty"). (*Id.* ¶¶ 3, 8). Chief Baty ordered the firefighters under his command to dyke and contain the spill, and he established a Hot Zone. (*Id.* ¶¶ 10, 13). In addition to Hamilton Township's efforts, the Madison County Hazmat team, the Delaware County Emergency Management Agency, the Delaware County Police, and the Indiana Department of Environmental Management, were also dispatched to the spill. (*Id.* ¶¶ 17, 19, 21, 30).

On August 5, 2008, ESBC, as the billing agent of Hamilton Township, prepared and sent an invoice to Defendants setting forth the clean-up costs that were incurred by Hamilton Township in responding to the spill, which totaled $8,495.99. (*Id.* ¶ 33, 34; Declaration of Allen Keen ¶ 7). To date, the invoice has not been paid.

On March 3, 2011, Hamilton Township assigned its claim to ESBC. (*Id.* ¶ 10). One month later, ESBC filed the present action against the Defendants seeking the costs it incurred in responding to the spill ($8,495.99) and its litigation-related attorney's fees.

**II.    Summary Judgment Standard**

Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The material facts in this case are undisputed, and the issue in dispute (discussed immediately below) is one of law. Therefore, summary judgment is particularly appropriate. *Brown v. Medtronic, Inc.*, 852 F.Supp. 717, 718 (S.D. Ind. 1994) (citation omitted).

**III.  Discussion**

In their Response, Defendants concede liability for the July 30, 2008, spill. Although Defendants object to certain line items on the $8,495.99 invoice sent by ESBC, the issue in the present motion is whether ESBC is entitled to its attorney's fees under CERCLA.

> The statutory section at issue reads:
>
> [In the event of a] release, or a threatened release which causes the incurrence of response costs, or a hazardous substance, [the responsible party shall be liable for]:
>
> (A) all costs of removal or remedial action incurred by the United States Government or a State . . . not inconsistent with the national contingency plan;
>
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan.

42 U.S.C. § 9607(a)(4)(A) & (B). Although attorney's fees are not specifically mentioned in this statute, courts have held that, as part of its recovery of response costs, the government may seek reimbursement for attorney's fees under Section 9607(a)(4)(A).

*United States v. Hardage*, 982 F.2d 1436, 1441 (10th Cir. 1992); *Reardon v. United States*, 947 F.2d 1509, 1514 (1st Cir. 1991); *United States v. Domenic Lombardi Realty, Inc.*, 334 F.Supp.2d 105, 106 (D.R.I. 2004). Conversely, private parties may not seek reimbursement for attorney's fees incurred for purposes of litigation, because they are not a "necessary cost of response" under Section 9607(a)(4)(B). *Key Tronic Corp. v United States*, 511 U.S. 809 (1994); *AM Int'l v. Datacard Corp.*, 106 F.3d 1342, 1348-49 (7th Cir. 1997). Thus, whether ESBC, as assignee of Hamilton Township, may recover its attorney's fees turns on whether Hamilton Township should be considered a "State" or the "United States Government" under Section 9607(a)(4)(A).

    **A.**    **"State"**

CERCLA defines "State" for purposes of Section 9607(a)(4)(A) as "the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the United States Virgin Islands, the Commonwealth of the Northern Marianas, and any other territory or possession over which the United States has jurisdiction." 42 U.S.C. § 9601(27). The term "State" is not limited to the state itself; it also includes any agency, department, or instrumentality of a state. *Washington State Dep't of Transp. v. Washington Natural Gas Co.*, 59 F.3d 793, 796 (9th Cir. 1995). Relying upon the dissenting opinion in a century-old United States Supreme Court opinion, ESBC argues that fire departments, like Hamilton Township, play a unique role within the operation of state government, and should therefore be considered an

instrumentality of the state. *Workman v. City of New York*, 179 U.S. 552, 585 (1900) (noting that fire protection "is a public and governmental duty, which rests upon the government of the state" and thus is for the benefit of the public). ESBC's reliance on the dissenting opinion in *Workman* is problematic, not only because it carries no precedential value, but also because the majority opinion actually runs counter to ESBC's argument:

> [I]t unquestionably appears that the fire department of the city of New York was an integral branch of the *local administration* and government of that city. The ministerial officers who directed the affairs of the department were selected and paid by the city; all the expenses of the department of every kind and nature were to be borne by the city, which was bound by all contracts made for such purpose; all the property of the department, including the fire-boats, belonged to the city; and the city was liable in case of an authorized destruction on land of property of individuals to prevent the spread of a conflagration.

*Id*. at 564-65 (emphasis added).

Next, ESBC relies on an Indiana Supreme Court opinion entitled *Ayres v. Indian Heights Vol. Fire Dep't, Inc.* for the proposition that fire departments are instrumentalities of the state. 493 N.E.2d 1229 (Ind. 1986). In *Ayres*, the Indiana Supreme Court held that the Indian Heights Volunteer Fire Department was immune from suit under the Indiana Tort Claims Act for its alleged negligence in fighting a fire that destroyed the plaintiffs' garage and its contents. *Id*. at 1230, 1237. The Court reasoned that firefighting is "uniquely governmental"; thus, "[w]hen private individuals or groups are endowed by the state with powers or functions governmental in nature, they become agencies or instrumentalities of the state and are subject to the laws and statutes affecting

5

governmental agencies and corporations." *Id*. at 1235. The Court then analyzed Title 36, Article 11, Chapters 11, 12, and 13 of the Indiana Code, which authorizes, *inter alia*, townships to provide fire protection for the citizens living within the township, including the creation of volunteer fire departments, and the methods by which volunteer fire departments are organized and created. *Id*. The *Ayres* Court concluded that "[i]t is clearly the intention of the Legislature to recognize volunteer fire departments as instrumentalities of *local* government . . . ." *Id*. at 1237 (emphasis added). The Indian Heights Volunteer Fire Department "was therefore an instrumentality of local government and was protected by the Indiana Tort Claims Act." *Id*.

Contrary to ESBC's position, Hamilton Township, like the Indian Heights Volunteer Fire Department in *Ayres*, is an instrumentality of local government, not state government. Ergo, ESBC, as assignee of Hamilton Township, is not a "State" within the meaning of Section 9607(a)(4)(A).

**B.    United States Government**

ESBC argues, in the alternative, that Hamilton Township should be considered the United States Government under Section 9607(a)(4)(A). ESBC's argument is premised on the following: (1) Congress expressly granted the President authority to handle the removal of hazardous materials and pollutants that pose an environmental threat, 42 U.S.C. § 9604(a)(1)(B); (2) the President delegated his authority over the execution of emergency removal actions to the Environmental Protection Agency ("EPA"), *APWU v.*

*Potter*, 343 F.3d 619, 626 (2d Cir. 2003) (citing Exec. Order No. 12580, 52 Fed. Reg. 2923 (1987)); (3) the EPA delegated its authority to local emergency responders to conduct emergency removal actions; and (4) Hamilton Township first responded to the chemical spill as the "lead agency" per 40 C.F.R. § 300.415(a)(4)(A). According to the implementing regulations, a "lead agency" may "take any appropriate removal action to abate, prevent, minimize, or eliminate the release or threat of release." *Id*.

 The implementing regulations define "lead agency" as a state or political subdivision "operating pursuant to contract or cooperative agreement executed pursuant to section 104(d)(1) of CERCLA, or designated pursuant to a Superfund Memorandum of Agreement. . . ." 40 C.F.R. § 300.5. ESBC was not operating under a contract or cooperative agreement executed pursuant to section 104(d)(1) of CERCLA; it simply responded to a 911 call. Hamilton Township, therefore, was not the "lead agency" as that term is defined by the implementing regulations.

 ESBC also relies on 40 C.F.R. § 311.1, which provides that state and local government employees engaged in "hazardous waste operations" must adhere to OSHA regulations found at 29 C.F.R. § 1910.120. The substantive provisions of 29 C.F.R. § 1910.120 apply in "States that do not have a State plan approved under section 18 of the Occupational Safety and Health Act of 1970." 40 C.F.R. § 311.1. Indiana is one of twenty-seven (27) states that does have a plan approved under section 18. *State Occupational Safety and Health Plans*, OSHA.GOV, http://222.osha.gov/dcsp/osp/

index.html.  As a result, 40 C.F.R. § 311.1 is inapplicable to this case.  The court therefore finds that ESBC, as assignee of Hamilton Township, is not the "United States Government" within the meaning of 42 U.S.C. § 9607(a)(4)(A).

### IV.  Conclusion

Hamilton Township is neither the "State" nor the "United States Government" for purposes of 42 U.S.C. § 9607(a)(4)(A).  Accordingly, ESBC, as assignee of Hamilton Township, is entitled to its "necessary costs of response" under 42 U.S.C. § 9607(a)(4)(B).  As established by the Supreme Court, ESBC's "necessary costs of response" do not include its litigation-related attorney's fees.  Accordingly, ESBC's Motion for Summary Judgment (Docket # 44) is **DENIED** with respect to that issue.

**SO ORDERED** this 9th day of January 2013.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.